Mr. Justice Shepard
delivered the opinion of the Court:
This is an appeal from the decision of the Commissioner of Patents in an interference proceeding having the following issue:
“ In a picture-exhibiting apparatus for giving the impression to the eye of objects in motion, the combination with a picture-carrying strip or film, a tension device adapted to keep the film taut and prevent flexing or puckering at the point of exposure, means for intermittently moving the film through the tension device at short intervals exceeding the interval required in affecting the movement, so that the interval of pause and illumination shall exceed the interval of motion, and mechanism for feeding the film so as to provide slack therein between the same and said tension device, whereby the film may be intermittently moved with great rapidity without unnecessary strain and wear upon the film.”
There were three parties to this proceeding on whose behalf testimony was taken, namely, Armat, Latham and Casler. The last named has taken no appeal from the final decision against him. Thomas Armat, having filed his application on February 19, 1896, is the senior party. Woodville Latham filed June 1, 1896, and upon him therefore lies the burden of proof. His testimony tended to show conception of the invention during the summer of 1894; but the examiner of interferences, who awarded him priority, thought it plain that he did not, until after January 1,1895, conceive any means for “ intermittently moving the film.” All the tribunals agreed that Armat’s conception and reduction to practice could not have been earlier than about November, 1895. Whether Latham had an earlier conception than accorded him by the examiner of interferences, or Armat’s reduction to practice shall be carried back to September or October of 1895, or confined to the date of his application, would seem to be unimportant. The question of priority must turn upon Latham’s claim of *347 reduction to practice between January 1, and early in May of 1895 — in which his claim of conception of the invention of the issue is largely involved — for if that claim should fail, efforts made in 1896 would not avail.
It is contended, on behalf of the appellant, that, in deciding this question, the Commissioner “ misconceived the gist and essence of the real improvement in issue.” In view’ of this contention it becomes important, .preliminarily, to consider the state of art of taking and exhibiting moving pictures at the time of the invention in controversy, and the conditions of its application therein.
It has been ascertained that the average human eye will retain the impression created by the rays of light from an object of sight, for a period of about one-seventh of a second of time, after the actual removal or obscuration of the object. All devices for the exhibition of moving pictures have been founded on this phenomenon, called the “persistence of vision.”
If, therefore, a series of pictures, consecutively taken, be exhibited in such rapid succession as to come within the aforesaid period of persistence of vision, the eye will net detect the fact that the pictures are being shifted, and the consequent effect will be that of a continuous representation of the objects in motion.
Several devices for the creation of such effects had been in existence for some years before the present parties entered the field. Among these was the well-known kinetoscope, patented to Edison March 14, 1893. In this a moving object that had been consecutively and rapidly photographed upon a long and narrow film, was made to move before the eye with the necessary rapidity to create the impression of the same object in continuous motion.
In these devices, however, the picture could be exhibited to but one person at a time. The next step in order was the projection of the pictures upon a screen for exhibition to a great number of persons, at the same time, through the *348 aid of the magic lantern. Instead of transferring. the pictures to glass, as had been the custom in the ordinaryuse of the magic lantern, the long picture-film or translucent celluloid base was arranged to pass between the condensing and magnifying lenses, with such motion as to cause the projection of the desired moving picture. A number of devices or machines, both for rapidly taking consecutive pictures upon long films, and for projecting similarly taken pictures upon screens through combination with the magic lantern, had been patented before this controversy began. How successful these had been, or how largely they had been utilized, does not appear. Some of them have been referred to on the argument, and copies have been exhibited by the parties in aid of their respective contentions; but there is no occasion to enumerate them here. In some of these, the continuous film, was passed along with an intermittent, or step-by-step, motion, thereby giving a brief period of rest for the exposure followed by a rapid substitution of the proper succeeding space. This intermittent motion is essential to the satisfactory performance of either process. It gives the rest period necessary for the impression of a distinct picture in the one, and for an effective view in the other. A rapid movement following the rest period maintains the proper consecutiveness in taking the picture, and makes available the “persistence of vision” in its subsequent exhibition.
The Joly apparatus for taking pictures, and one of those above referred to, embodies also the feature of forming slack in the film at the point where it enters the tension device. This formation of slack is a part of the combination of the issue and will be recurred to later. A machine, called the phantoscope, for the purpose of projecting pictures, was patented to Jenkins and Armat July 20, 1897. One of the objects set forth in its specifications is to provide means for displacing and substituting a picture in an interval of time less than the period of exposure and illumination.
*349 One serious impairment of the value of these picture exhibiting machines, including the phantoscope aforesaid, was the injury and speedy destruction of the film by repeated use. This film, which is often of great length and very expensive, is wound upon a reel for feeding to the carrying mechanism. After passing the point of exposure, it is taken up by a corresponding reel upon that side.
To bring the pictures forward regularly and accurately, perforations made in the edge of the film are engaged by the teeth of the sprocket-wheel which imparts the intermittent motion. The film must also be engaged by a device that keeps it tight and smooth at the point of exposure and illumination. After coming to a stop for the established exposure period, the film is moved rapidly so as to present the next succeeding picture for. illumination and exposure before the impression of the first shall have faded from the retina.
An increased rapidity of this movement will add to the efficiency of the apparatus. Now, when operated by one mechanism, as had formerly been the case, the sudden jerk following the period of rest had not only to overcomethe resistance of that inertia and the friction of the tension device, but also the resistance of the reels which, in some instances, would be great. The resulting injury to the films consisted mainly in tearing at the points of engagement with the teeth of the sprocket-wheel.
One object of the invention of the issue, and which the appellant contends is the only patentable feature of the combination, was the provision of means for maintaining the intermittent feed of the film and relieving it of all additional strain and wear during the operation. The new apparatus embraces two separate and independently actuated feeding mechanisms. One of these operates continuously and with comparative slowness to unwind the film from one reel and wind it upon the other, and is so constructed and arranged as to maintain any desired amount *350 of slack in the film between the delivery reel and the tension device. The second co-operates, but is quick acting and intermittent.
By its sudden, quick motion, it jerks the film, for a space not exceeding the slack maintained therein, through the exposure opening after each period of rest.
In addition to this feature the Patent Office authorities regarded another as essential to render the combination of the issue patentable, namely, “ means for intermittently moving the film through the tension device at short intervals exceeding the interval required in effecting the movement, so that the interval of pause and illumination shall exceed the interval of motion.”
And it appears that Armat’s application in this case was rejected until he added to his claim the words of the issue— so that the interval of pause and illumination shall exceed the interval of motion. We have seen that former devices were made to feed the film in such manner as to provide a period of rest longer than the following period of movement ; but it seems that exhibiting machines were operated like the taking cameras with shutters usually in the form of a revolving disk, with openings, which alternately cover and expose the film-spaces as moved. By reason of this, the period of illumination was made less than the period of rest, and the general effect of the exposition was impaired by the frequent passage of the opaque part of the shutter across the rays of light while the picture was still at the point of exposure. At any rate, it was thought essential to the combination allowed, and as such declared in interference, that the period of pause and illumination should exceed the period of motion required to bring forward the next succeeding picture of the series. This was equivalent to saying that each picture when in the field of exposure should be illuminated without interruption.
This brings us to the 'contention of the appellant that the *351 sole patentable novelty of the invention of the issue consists in the feature of the mechanism for intermittently moving the film “with great rapidity without unnecessary strain and wear upon the film.”
For reasons that have been sufficiently expressed in former decisions, the question of patentability, is not ordinarily regarded as open on appeal to this court in an interference case, but is to be regarded therein as conclusively established by the Commissioner of Patents. The question in such cases is one of priority and not of patentability. Hisey v. Peters, 6 App. D. C. 68, 70; Doyle v. McRoberts, 10 App. D. C. 445, 467; Newton v. Woodward, 16 App. D. C. 568, 572. It is true that there might be exceptional circumstances in a particular case whereby the question might be inexlpicably involved in the merits of the claim of priority, and become incidentally a part of the final determination thereof. No such circumstances are shown here.
Again, patentable novelty has been declared .in the Patent Office to lie in an apparatus embodying all of the elements set forth in the issue. The rule of the Patent Office seems to be well established that when a party has incorporated an element into his claim it is to be regarded as a material part of his invention. Wolfenden v. Price, C. D., 1898, 87 : 83 O. G. 1801.
Be that as it may, having said that the., question of patentability is one for the exclusive determination of the Commissioner of Patents, to the extent that it is involved in a proceeding of the restricted nature of an interference case, it would seem to follow that such determination must be accepted in the terms in which it has been formulated.
It remains now to consider Latham’s claim of reduction to practice.
A picture-taking camera, like many of these heretofore referred to as patented, could undoubtedly be utilized as an *352 apparatus for exhibiting pictures also, by substituting a picture film in the carrying device and then applying the apparatus of the magic lantern. Notwithstanding this capacity for both uses, as said by the examiners in chief, “ the Patent Office appears to have recognized the distinction between the cameras for taking pictures and similar apparatus for exhibiting pictures.”
They refer, for illustrative examples, to claim 1 of the Jenkins and Armat patent and claim 4 of Edison’s patent for a kinetographic camera, and say: “The sensitive film of the Edison taking apparatus has precisely the same-intermittent motion as the picture-carrying surface described in the claim of the Jenkins-Armat patent.”
The reasons for this distinction need not be entered into. It has not been questioned, and, moreover, would seem to stand as any other question of patentability in respect of collateral inquiry in this character of proceeding.
It appears that the original apparatus of Latham (Exhibit 12) on which the reduction to practice of the invention of the issue has been claimed, operated with the double mechanism — one continuously feeding the film from the reel, and the other intermittently moving it across the path of exposure. This was undoubtedly an effective machine operated as a camera for taking consecutive pictures, but that is the only practical use to which it has been put.
That it was experimented with on one or more occasions by Professor Latham and his sons, as an apparatus for projecting pictures, may be regarded as established. In ascertaining the result of this experimentation, the evidence relating to it, given several years afterwards, must be considered in the light of the subsequent acts and conduct of the parties interested and other surrounding circumstances. So considered, it does not appear to us sufficient to justify the reversal of the decisions of the examiners in chief and Commissioner, to the effect that' *353 what was then done in trial of the machine amounted to nothing more than an abandoned experiment. These private tests were not followed by a public exhibition. The machine, though kept and satisfactorily operated as a camera for taking pictures, was not again tried for their projection. Such use, however, can not be taken as reduction to practice of the other, because of the patentable distinction, before referred to, that has been observed between apparatus for taking pictures, and that for their exhibition. Breul v. Smith, 10 App. D. C. 180, 185; Tracy v. Leslie, 14 App. D. C. 126, 135.
Just what does amount to reduction to practice of a machine, as contradistinguished from unsatisfactory and abandoned experiments, presents a question of constant difficulty in this class of cases, and depends, chiefly, upon the special circumstances, of each case in which it is sought to be established. A rule can not be laid down in one case to govern all others. At one time it may be held reduction to practice, where the machine, though defective in mechanical construction and working crudely in practical, public trials, nevertheless demonstrates its practical efficacy and utility, and the subsequent failure to perfect by the application of the necessary mechanical skill has been satisfactorily accounted for, as is in cases like that of Coffee v. Guerrant, 3 App. D. C. 497. Again, it may be held as falling short of reduction to practice, where a machine, though skillfully constructed, at great exDense, has only been tested by the inventor once in the presence of a witness, and then all testimony fails in respect of its subsequent use for the only purpose of its alleged invention, as in cases like that of Reichenbach v. Kelley, ante, p. 333, and others therein cited.
We are free to confess in this case, that, the inspection of the original machine, and the proof of its efficient performance in intermittently moving the film for the taking of pictures, in connection with the evidence of the first private *354 trials in exhibiting pictures, has strongly inclined us to decide in favor of its reduction to practice. But we have not been able to overcome the weight of one circumstance that has important bearing upon the sufficiency of the test as reduction to practice, when we bear in mind all of the limitations and requirements of the issue, which we have heretofore said must be done.
As we have seen, an important element of the invention of this issue is the requirement to give a longer period for pause, and for the illumination of the picture, than is required for its displacement and substitution by the one following; and this period of pause and illumination is concurrent. The original machine was constructed with a shutter, and that shutter remains a part of it. Such a shutter performs an important, if not necessary, function in a camera for taking pictures, but operates injuriously when the apparatus is used for their exhibition, as has been heretofore described. Practically, it reduces the illumination period to that of the movement of substitution.
The examiner of interferences, who decided in favor of Latham, stated in his decision, that the machine had been constructed for taking pictures and not for their exhibition, and that with the shutter it could not be made to conform to the issue in respect of giving a period of illumination in excess of the period given to jerk the film from picture to picture. His conclusion in favor of Latham’s priority was put upon the ground, that the shutter was not demanded by the issue, and being no -essential element of a picture exhibiting machine, could be removed and set aside, whereupon the machine would become an embodiment of every element of the issue. Consequently, as the machine, though invented for taking pictures, could, by removing the shutter, be as effective for their exhibition, he was of the opinion that Latham was entitled to the benefit of this additional use even if he had not conceived or appreciated it. For reasons heretofore given, this view is not tenable.
*355 Referring to the testimony, it does not appear that Latham had any idea of detaching this shutter in using the machine for exhibiting pictures.
It was attached when he made the experiments relied upon. Nor does it appear that he dispensed with it in making the later machines with which he had made exhibitions. If he ever realized that the shutter of the taking camera was useless in the machine when converted into an exhibitor, or an impediment to the excellence of its use as such, and therefore dispensed with it in subsequent constructions, his evidence does not show it, affirmatively; and this it was incumbent upon him to do.
It is this condition that involves, to a certain extent, the question of his conception of the invention of the issue, with that of his reduction to practice, and renders it impossible for us to find that he has overcome the burden necessary to an award of priority over Armat.
The case has been one of difficulty, and we have come to a decision not without some doubts as to its soundness; but that very doubt, if nothing more, would demand that the decision of the Commissioner be not reversed.
For the reasons given the decision will be affirmed, and the proceedings herein will be certified to the Commissioner of Patents as required by law. It is so ordered. Affirmed.
A motion for rehearing was overruled.